UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| GILLMAN RODDY LONG, a/k/a Dave Gillman Long,<br><br>                    Petitioner,<br><br>        vs.<br><br>UNITED STATES OF AMERICA,<br><br>                    Respondent. | CIV. 14-5022-KES<br><br><br>ORDER GRANTING<br>MOTION TO DISMISS |

Petitioner, Gillman Roddy Long, moves to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. Docket 1. The government opposes the motion and moves to dismiss. Docket 9. For the following reasons, the court grants the government's motion and dismisses Long's § 2255 motion.

## BACKGROUND

Long was indicted in the United States District Court for the District of South Dakota, Western Division, on July 21, 2009. *USA v. Long*, 09-CR-50051 ("CR Docket") 4. The case was tried to a jury, and Long was found guilty of two counts of Aggravated Sexual Abuse. CR Docket 212. Long was represented at trial by Monica Colbath.

The victim, AP, testified at trial that Long sexually abused her while she was living with her aunt Brenda, Long's girlfriend, and Long. Docket 1 at 4. AP testified that Long abused her approximately 40 to 45 times. CR Docket 287 at

17. She testified that she told numerous people about Long's abuse, many before she reported the abuse to law enforcement. CR Docket 269 at 3-4. TE, Long's stepdaughter, also testified that Long abused her over many years. *Id.* at 10. The jury saw all the witnesses testify at trial and determined they were credible.

The government called FBI agent Sherry Rice to testify during its case-in-chief. Docket 1 at 12. She interviewed Long during her investigation into the abuse of AP. *Id.* Agent Rice testified that Long described an incident to her where AP rubbed her breasts on Long's back, and Long pushed her away from him. *Id.* at 12-13. She also testified that when she told Long that she wanted to "concentrate on the sexual contact between" Long and AP, he responded, "I do not want to incriminate myself. I would like to stop talking." *Id.* at 13. Colbath did not object to this testimony. *Id.*

During the cross-examination of Agent Rice, Colbath asked her several questions about the meaning of Long's statement. *Id.* at 13-14. Agent Rice responded that the meaning of Long's statement was clear to her, i.e., that Long meant that he had sexually abused AP. *Id.* at 14. On re-direct examination, the government again asked Agent Rice about Long's response to her question about what happened between AP and him, and Agent Rice agreed that Long said he did not want to incriminate himself. *Id.* at 15.

The government also referenced Long's statement in its closing argument. The government stated, " 'I don't want to incriminate myself.' That was what Gillman Long said to Agent Sherry Rice when she asked him about

2

sexual contact between him and [AP] … What was his response? 'I don't want to incriminate myself.' " *Id.* Colbath did not object to this. *Id.* at 16. After again pointing out that Long ended the interview with Agent Rice by saying he did not want to incriminate himself, the government stated, "We are asking you not to leave your common sense at the door. If somebody doesn't want to incriminate themselves, it means any sort of statement as to that topic that they are being asked for would get them in trouble." *Id.* Colbath did not object.

Long did not testify at trial. *Id.* at 1.  Colbath did object to the government stating in its closing argument that Long did not say "I didn't do it." *Id.* at 15. The government clarified during its closing argument that the jury could not hold Long's decision not to testify against him. *Id.*

After Long was found guilty, he moved to vacate the judgment and requested a new trial. CR Docket 273. The court held that the government's use of Long's statement did not violate his Fifth Amendment rights because he had not been arrested and was under no compulsion to speak. CR Docket 287 at 15. Therefore, Colbath could not be ineffective in her failure to object to the government's use of the statement. *Id.* The court also found that Long could not show prejudice because overwhelming evidence supported his guilt, and he could not prove Colbath's actions were not sound trial strategy. *Id.* at 23. The court denied Long's motion. Long was sentenced to life imprisonment. CR Docket 290.

Long appealed his conviction. On appeal, he argued:

3

(1) the use of his 'incriminate myself' statement by the government in its case-in-chief as a confession to the crime violated the Fifth Amendment because the statement was made in an effort to invoke his Fifth Amendment right to remain silent after he had agreed to answer Agent Rice's questions, (2) the district court plainly erred in not finding prosecutorial misconduct when the government referenced Long's decision not to testify at trial, and (3) the district court abused its discretion when it determined by denying the motion for a new trial, that Long had not received ineffective assistance of counsel.

*United States v. Long*, 721 F.3d 920, 924 (8th Cir. 2013).

Because Colbath did not object to the government's use of his "incriminate myself" statement, the Eighth Circuit Court of Appeals applied a plain error standard of review. *Id.* To obtain relief, Long was obliged to show that " 'there was an error, the error is clear or obvious under current law, the error affected the party's substantial rights, and the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.' " *Id.* (quoting *United States v. Poitra*, 648 F.3d 884, 887 (8th Cir. 2011)). The Court upheld Long's conviction, a decision that was "based largely on the plain error standard of review." *Id.* at 926.

The Court of Appeals first discussed Long's argument concerning the government's use of his statement as a confession. This was a question of first impression for the Court. *Id.* at 924. The Court stated that it had previously found that use of a defendant's silence in the same situation was constitutional. *Id.* at 924-25; see *United States v. Frazier*, 408 F.3d 1102 (8th Cir. 2005). The Court also cited with approval *United States v. Davenport*, 929 F.2d 1169 (7th Cir. 1991), in which the Seventh Circuit held that once

4

defendants agreed to answer questions, "any statement they made—including 'I won't tell you'—was fair game." *Id.* at 1174.

The issue was "determined by application of the elements of plain error review," and the Court held that "even if it was error for the government to admit Long's pre-arrest, pre-Miranda 'incriminate myself' statement as part of the government's case-in-chief—a question we do not reach—it was certainly not an error that is 'clear or obvious under current law.' " *Long*, 721 F.3d at 925 (quoting *United States v. Poitra*, 648 F.3d 884, 887 (8th Cir. 2011)). The Court of Appeals found that the district court did not plainly err by failing to *sua sponte* strike Agent Rice's testimony or the reference to Long's statement in the government's closing argument. *Id.*

The Court of Appeals next discussed Long's claim that during its closing argument, the government improperly commented that Long did not testify at trial. *Id.* This claim was reviewed for plain error because Colbath did not object to the comment on constitutional grounds. *Id.* The Court discussed the subsequent history of the rule, announced in *Griffin v. California*, 380 U.S. 609 (1965), that "the Fifth Amendment 'forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt.' " *Long*, 721 F.3d at 925-26 (quoting *Griffin*, 380 U.S. at 615).

Here, the Court found that the government "merely rephrased the instruction the court presented to the jury moments before closing arguments" and that the comment "was not presented in a context to suggest that the jury construe Long's decision not to testify against him." *Id.* at 926. Instead, the

5

Court found that the government "made the comment to contrast the prohibition on considering Long's decision not to testify with the consideration of his statement to Agent Rice." *Id.* Therefore, the Court of Appeals found that the district court did not clearly err by failing to *sua sponte* strike the comment. *Id.*

Finally, the Court of Appeals did not decide Long's argument that he received ineffective assistance of counsel. First, the Court stated that ineffective assitance claims are generally " 'better left for post-conviction proceedings' under 28 U.S.C. § 2255." *Id.* (quoting *United States v. Cook*, 356 F.3d 913, 919 (8th Cir. 2004)). Second, the Court of Appeals' decision to uphold Long's conviction was "based largely on the plain error standard of review." *Id.* Therefore, it was necessary to develop facts outside of the record such as whether the decision not to object was due to trial strategy in order to evaluate a claim for ineffective assistance. *Id.* at 926-27.

Long filed this petition on April 1, 2014. Docket 1. Long argued that the government violated his Fifth Amendment privilege against self-incrimination by using his "I don't want to incriminate myself statement" during its case-in-chief and by mentioning this statement and the fact that he did not testify during its closing argument. *Id.* at 3. He claimed his Sixth Amendment right to effective assistance of counsel was denied by Colbath's failure to move to suppress this evidence before trial, to object to the evidence during the government's case-in-chief, and to object during the government's closing

6

argument. *Id.* Additionally, Long claims Colbath was ineffective because she raised the issue herself in cross-examination. *Id.*

The government moves to dismiss the petition, arguing that Colbath's assistance was not ineffective. It argues that Long's statement was admissible, Colbath's actions were part of a sound trial strategy, and even if Colbath was ineffective, Long was not prejudiced. Docket 30 at 8-9. On June 17, 2015, an evidentiary hearing was held in which one witness, Colbath, was called and questioned. Docket 21. Colbath explained her actions and litigation strategy in Long's case. *Id.* Afterward, Long filed a brief in support of his ineffective assistance of counsel claim, Docket 26, the government responded, Docket 30, and Long replied. Docket 31.

## LEGAL STANDARD

A § 2255 motion is the "statutory analog of habeas corpus for persons in federal custody." *United States v. Martin*, 408 F.3d 1089, 1093 (8th Cir. 2005) (citation omitted). A federal prisoner may seek relief from his sentence on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255. Relief may be granted under § 2255 only for "transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice."

7

*Walking Eagle v. United States*, 742 F.3d 1079, 1082 (8th Cir. 2014) (citation omitted).

## DISCUSSION

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. To successfully state an ineffective assistance of counsel claim, Long must show that " '(1) trial counsel's performance was so deficient as to fall below an objective standard of the customary skill and diligence displayed by a reasonably competent attorney, and (2) trial counsel's deficient performance prejudiced the defense.' " *Becker v. Luebbers*, 578 F.3d 907, 915 (8th Cir. 2009) (quoting *Armstrong v. Kemna*, 534 F.3d 857, 863 (8th Cir. 2008)).

The court's scrutiny of an attorney's performance is extremely deferential, with a strong presumption that counsel's performance was within a wide range of professional and reasonable judgment. *Armstrong*, 534 F.3d at 863 (citing *Middleton v. Roper*, 455 F.3d 838, 846 (8th Cir. 2006)). To show prejudice, Long must establish that " 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.* at 866 (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). "Failure to establish either *Strickland* prong is fatal to an ineffective-assistance claim." *Worthington v. Roper*, 631 F.3d 487, 498 (8th Cir. 2011) (citing *Strickland*, 466 U.S. at 697).

## I.   Long's Statement

### A.   Deficient Performance

Before the court can decide if Colbath's failure to object to the use of Long's statement was deficient, it must determine whether the use of the statement was constitutionally defective such that no reasonable attorney would have failed to object to its use.

The Fifth Amendment to the United States Constitution offers protection that "[n]o person shall be . . . compelled in any criminal case to be a witness against himself[.]" U.S. Const. amend. V. The main protection afforded by the Fifth Amendment is to prevent a criminal defendant from being compelled to testify against himself at trial. *United States v. Frazier*, 408 F.3d 1102, 1109 (8th Cir. 2005) (citing *Chavez v. Martinez*, 538 U.S. 760, 767 (2003)). The Fifth Amendment also prohibits "comment by the prosecution on the accused's silence[.]" *Griffin*, 380 U.S. at 615. The Supreme Court has made it clear that "the prosecution may not . . . use at trial the fact that [the defendant] stood mute or claimed his privilege in the face of accusation" when faced with "police custodial interrogation." *Miranda v. Arizona*, 384 U.S. 436, 468 n. 37 (1966).

In *Doyle v. Ohio*, 426 U.S. 610, 619 (1976), the Supreme Court determined that the use of a defendant's postarrest, post-*Miranda* silence for impeachment purposes violated the defendant's rights under the Due Process Clause of the Fourteenth Amendment. *Miranda* warnings have an implicit assurance that the defendant's silence will not be used against him. *Id.* at 617-18. The court found, therefore, that this use of defendant's silence was

9

improper because post-*Miranda* silence is ambiguous and could be an arrestee's exercise of his *Miranda* rights. *Id.* Therefore, the use of that silence against the arrestee would penalize him for relying on the *Miranda* assurances made by the government. *Id.* at 618-19.

The Supreme Court has also concluded that the government's use of an arrestee's post-*Miranda* silence in its case-in-chief is improper when the defendant invokes his right to counsel in the face of questioning. *Wainwright v. Greenfield*, 474 U.S. 284, 292 (1986). The Supreme Court found, however, that the use of postarrest, pre-*Miranda* silence to impeach a testifying defendant did not violate due process. *Fletcher v. Weir*, 455 U.S. 603, 607 (1982). The court found that "[i]n the absence of the sort of affirmative assurances embodied in the *Miranda* warnings, we do not believe that it violates due process of law for a State to permit cross-examination as to postarrest silence when a defendant chooses to take the stand." *Id.*

The Supreme Court has not determined whether it is proper for the government to introduce evidence of a defendant's prearrest, pre-*Miranda* silence during its case-in-chief as the government did at Long's trial. There is a body of case law on the government's use of a defendant's silence, but not necessarily the government's use of the words used to invoke the right to remain silent.

Long cites numerous cases outside of the Eighth Circuit, including a First Circuit case where the Court of Appeals found that the government's use of the defendant's statement that he was not going to confess to the police was

10

an improper comment on the defendant's constitutional right to silence and could not be used against him. *Coppola v. Powell*, 878 F.2d 1562 (1st Cir. 1989). While there is a circuit split[1] in the courts of appeal as to whether the government may use the defendant's postarrest, pre-*Miranda* silence in its case-in-chief, the Eighth Circuit Court of Appeals has found that such evidence is admissible. *United States v. Osuna-Zepeda*, 416 F.3d 838 (8th Cir. 2005); *United States v. Frazier*, 408 F.3d 1102 (8th Cir. 2005). These cases guide the court's analysis of the government's use of prearrest and pre-*Miranda* statements.

In *Frazier*, the Eighth Circuit held that using "postarrest, pre-*Miranda* silence in a prosecution's case-in-chief was not unconstitutional." *Osuna-Zepeda*, 416 F.3d at 844 (citing *Frazier*, 408 F.3d at 1109-11). The court stated that when the defendant was arrested "there was no governmental action at

---

[1] *Compare United States v. Oplinger*, 150 F.3d 1061, 1066-67 (9th Cir. 1998) (holding the privilege against self-incrimination does not apply when the defendant is under no official compulsion to speak); *United States v. Zanabria*, 74 F.3d 590, 593 (5th Cir. 1996) (concluding that when the silence is not induced by government action, the Fifth Amendment does not protect the use of defendant's prearrest silence); *United States v. Rivera*, 944 F.2d 1563, 1568 (11th Cir. 1991) (stating that the government can comment on defendant's silence when it occurs prior to arrest and prior to *Miranda*); *United States v. Moore*, 104 F.3d 377, 385 (D.C. Cir. 1997) (stating that the critical inquiry is not the giving of *Miranda* rights, but whether the defendant is in custody) with *Combs v. Coyle*, 205 F.3d 269 (6th Cir. 2000) (determining that defendant's counsel was ineffective for failing to object to the government's use of defendant's postarrest and pre-*Miranda* statement that he wanted to talk to his lawyer because it violated his Fifth Amendment right against self-incrimination); *Coppola v. Powell*, 878 F.2d 1562 (1st Cir. 1989) (determining that when defendant does not testify at trial it is impermissible to comment on any Fifth Amendment rights that were exercised); *United States ex rel. Savory v. Lane*, 832 F.2d 1011, 1017 (7th Cir. 1987) (determining that the right to remain silent attaches before formal adversarial proceedings commence).

11

that point inducing his silence," and the defendant "was under no government-imposed compulsion to speak." *Frazier*, 408 F.3d at 1111. Similarly, in *Osuna-Zepeda*, the Eighth Circuit determined that the case only concerned the defendant's "silence during and just after his arrest." 416 F.3d at 844. Although Osuna-Zepeda had been arrested and taken into custody, he was not read his *Miranda* rights. *Id.* The government then tried to use Osuna-Zepeda's postarrest and pre-*Miranda* silence during the government's case-in-chief. *Id.* The Eighth Circuit concluded in both *Frazier* and *Osuna-Zepeda* that the introduction of defendants' silence did not violate their constitutional rights.

The Eighth Circuit also has said that whether the defendant has received his *Miranda* rights is what is determinative of the right to remain silent, but in this type of case, there is more to the inquiry. *Vick v. Lockhart*, 952 F.2d 999, 1003 (8th Cir. 1991) (citation omitted). The precise inquiry is if the defendant is under a compulsion to speak. *Frazier*, 408 F.3d at 1111. The Eighth Circuit also noted that an arrest in and of itself is not sufficient government action that compels a defendant to speak. *Weir*, 455 U.S. at 606.

Here there was no arrest, no *Miranda* warnings, and no governmental action mandating speech. *See United States v. Rivera*, 944 F.2d 1563, 1568 (11th Cir. 1991) (concluding that "the government may comment on a defendant's silence if it occurred prior to the time he is arrested and given his *Miranda* warnings."). Long was under no compulsion to speak when he made the statement that he wanted to stop talking so he did not incriminate himself. He was told that he was free to leave, he could stop talking at any time, and he

was not under arrest or in custody. *See Moore*, 104 F.3d at 386 ("We therefore think it evident that custody and not interrogation is the triggering mechanism for the right of pretrial silence under *Miranda*"). Long's situation was less hostile than what occurred in either *Frazier* or *Osuna-Zepeda* because Long was not under arrest and was not given his *Miranda* warnings.

There is a distinction between *Frazier* and *Osuna-Zepeda* and Long's case because here the government used a substantive statement invoking silence rather than silence in the face of questioning. Many courts, however, have found that the use of words to claim a right to remain silent is the same as silence itself. *See Wainwright*, 474 U.S. at 295 n. 3 (stating "silence does not mean only muteness; it includes the statement of a desire to remain silent"). For these reasons, the court finds *Frazier* and *Osuna-Zepeda* persuasive as to the rationale and conclusion that the appropriate inquiry is whether Long was under a compulsion to speak when he made his statement. There was substantial evidence that Long was free to leave at any time and that his presence at the interview with Agent Rice was voluntary. Moreover, there is no indication that when Long made his statement he was relying on the government's assurance that his silence would not be used against him because it was a pre-*Miranda* interview. *See Weir*, 455 U.S. at 606 ("[W]e have consistently explained *Doyle* as a case where the government had induced silence by implicitly assuring the defendant that his silence would not be used against him").

13

Long argues that there was no authority that permitted the introduction of his statement, Docket 1 at 25, and that admissibility of this evidence is an open question in the Eighth Circuit. Docket 26 at 8. During the evidentiary hearing, Colbath testified that her research had indicated that the statement would be admissible. Docket 21 at 19-25, 27. Colbath explained that the reason she did not try to exclude or object to the government's use of the statement was because she believed it was admissible. *Id.* at 37; 6-8. Even if Long was compelled by law enforcement to make his statement, the law was unsettled as to whether that statement would be admitted. At best, Long shows that there was a possibility that the statement would have been excluded. Therefore, it was not ineffective assistance of counsel for Colbath to fail to challenge the evidence when research indicated it would be admitted.

Because Long was under no compulsion to speak, it was not unconstitutional for the government to use Long's statements in its case-in-chief. Even if he was compelled to speak, it was not a settled question of law in the Eighth Circuit that the evidence would be excluded. For these reasons, Long has not established that his trial counsel's performance was deficient when she did not move to suppress the evidence, object at trial, or object during closing arguments. *See Armstrong*, 534 F.3d at 863 (noting the strong deference to finding counsel's performance was reasonable).

###### B.      Weight of the Evidence and Prejudice

Long argues that the case against him was weak. Therefore, the government's use of his statement caused him prejudice because it was the reason he was found guilty.

Long points out deficiencies in the government's case. AP testified that she did not like living with Brenda, her aunt and Long's girlfriend. Docket 1 at 4. During AP's testimony, the prosecution had to backtrack several times because her testimony was either inconsistent with her previous statements to law enforcement or other parts of her testimony. *Id.* at 4-10. AP's testimony was not supported by physical evidence. *Id.* at 4. Also, numerous witnesses testified to AP's reputation for untruthfulness. *Id.* at 10. TE, Long's stepdaughter, testified to making false reports of abuse to law enforcement against her mother. *Id.* at 11. During cross-examination, doubt was cast over whether TE had lied about being abused by Long in the past. *Id.* Other witnesses testified to TE's reputation for untruthfulness. *Id.* at 12.

After reviewing all the evidence that was admitted during the trial, the court finds that even without the references to Long's statement, there was still strong evidence by two complaining witnesses that they had been victims of forcible sexual abuse by Long. AP testified extensively about the abuse that occurred in her home approximately 40 to 45 times. She testified that she told Brenda Brewer, Oma Perez, Suzie Red Cloud, Harriet Broken Nose, Mona Waters, Kristin Waters, Jacey Twiss, D.J. Clifford, Juan Ramos, and Brad Conroy about Long's abuse of her. CR Docket 269 at 3-4. Multiple witnesses

testified at trial that AP told them that Long had been abusing her before she reported it to law enforcement. TE also testified about Long's systematic abuse that occurred when she was young and Long was living with her. The jury saw all the witnesses testify at trial, and the jury made the determination of these witnesses' credibility. The jury only had to believe AP's testimony to find Long guilty of the charges. *See United States v. DeCoteau*, 630 F.3d 1091, 1097 (8th Cir. 2011) (noting that "a victim's testimony alone can be sufficient to prove aggravated sexual abuse").

Long has not met his burden of establishing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Long cannot show that there is a substantial likelihood that there would have been a different result but for the admission of Long's statements. *See Hanegan v. Miller*, 663 F.3d 349, 355 (8th Cir. 2011) ("The likelihood of a different result must be substantial, not just conceivable").

Long has not shown that he was prejudiced by his trial counsel's performance because the overwhelming weight of the government's evidence proved Long's guilt beyond a reasonable doubt. *See Simmons v. Taylor*, 195 F.3d 346, 349 (8th Cir. 1999) (stating that even if the court remanded the case back to the trial court for an evidentiary hearing "the overwhelming weight of the state's evidence of [defendant]'s guilt would make it impossible for him to demonstrate prejudice under *Strickland*"). Because Long has not satisfied either the deficiency prong or the prejudice prong of *Strickland,* his ineffective

16

assistance of counsel claim based on Colbath's failure to challenge the government's use of his statement is dismissed.

## II.   Long's Failure to Testify

Long argues that the government violated his Fifth Amendment privilege against self-incrimination by commenting during its closing argument that he did not testify at trial. Docket 1 at 3. Long argues that he was denied his Sixth Amendment right to effective assistance of counsel because Colbath did not challenge this comment. *Id.* Before the court can decide if Colbath's failure to object to the government's comment during its closing argument that Long did not testify was deficient, it must determine whether the government's comment was constitutionally defective such that no reasonable attorney would have failed to object to its use.

The Eighth Circuit Court of Appeals discussed this claim in Long's direct appeal. It stated that "the Supreme Court held that the Fifth Amendment 'forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt.' " *Long*, 721 F.3d at 926 (quoting *Griffin*, 380 U.S. at 615). The Court of Appeals explained that this original holding has been narrowed by subsequent cases. *Id.* at 926 (citing *Lakeside v. Oregon*, 435 U.S. 333 (1978); *United States v. Robinson*, 485 U.S. 25 (1988)).

The Court of Appeals construed the comment as "merely rephrase[ing] the instruction the court presented to the jury moments before closing arguments," and contrasting "the prohibition on considering Long's decision

not to testify with the consideration of his statement to Agent Rice." *Id.* The comment "was not presented in a context to suggest that the jury construe Long's decision not to testify against him." *Id.* The Court of Appeals held that the district court "did not clearly err in allowing the statement during closing argument," and even if it did clearly err, Long did not suffer prejudice because of the government's comment. *Id.*

Long argues that the government treated his decision not to testify at trial as substantive evidence of guilt. Docket 1 at 21. He also argues that this comment, coupled with the government's use of his statement as a confession, violated his constitutional rights, and Colbath's decision not to object constituted ineffective assistance of counsel. *Id.* at 27.

As the government points out, however, Long fails to show that the comment was improper. Docket 10 at 9. The comment was an accurate statement of the law: "Ladies and gentlemen, you can never use against somebody when they invoke their right to remain silent. You can't use that Mr. Long didn't testify in this trial; you cannot use that against him." CR Docket 270 at 442. Because the comment was not impermissible, the failure to object to it was not deficient. As with his first claim, Long fails to show Colbath's deficiency in failing to object to this comment.

Because Long fails to show Colbath's deficiency, the court need not discuss the prejudice prong of *Strickland. See Worthington*, 631 F.3d at 498 ("Failure to establish either *Strickland* prong is fatal to an ineffective-assistance claim"). Even so, Long's failure to show prejudice discussed above is equally

18

applicable to his second claim. Without the government's comment during its closing argument, the overwhelming weight of the government's evidence showed Long's guilt. *See Simmons*, 195 F.3d at 349. Because Long cannot satisfy either the deficiency prong or the prejudice prong of *Strickland*, his ineffective assistance of counsel claim based on Colbath's failure to object to the government's comment during its closing that he did not testify in his defense is dismissed.

## V.    Certificate of Appealability

Before denial of a § 2255 motion may be appealed, a petitioner must first obtain a certificate of appealability from the district court. *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). A certificate may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(2). A "substantial showing" is one that demonstrates "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because the Eighth Circuit has not squarely addressed both of Long's issues, the court finds that Long has made a substantial showing that his constitutional rights were denied. Consequently, a certificate of appealability on both issues is granted.

## CONCLUSION

Long argues that his trial counsel's failure to exclude his "incriminate myself" statement or to object to the government's use of the statement and counsel's failure to object to the government's comment that he did not testify

at trial denied him his right to effective assistance of counsel under the Sixth Amendment. The court disagrees. Long was under no compulsion to speak when he made his statement. Therefore, the government's use of the statement did not violate his Fifth Amendment rights. Further, the law in the Eighth Circuit is unsettled. Failure to object to the use of the statement cannot, therefore, be grounds for a claim for ineffective assistance of counsel. The government also accurately stated the law when it commented that Long did not testify in his defense. It did not ask the jury to construe this fact against him. Long also fails to show prejudice in either claim because the evidence against him, even without his statement or the government's comment on his silence, was overwhelming.

IT IS ORDERED that

1.  The government's motion to dismiss (Docket 9) is granted.

2.  Long's Motion to Vacate, Set Aside, or Correct his sentence (Docket 1) is dismissed.

3.  A certificate of appealability is issued.

Dated May 19, 2016.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE